IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD WILLIAM HUDSON,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-CV-0589-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (Docs. 7 and 18), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' cross-motions for summary judgment (Docs. 12 and 15).

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1     Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2     If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3     If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the clam is granted;

Step 4     If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

2

| | |
|---|---|
| Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See id.

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on October 17, 2013. See CAR 18.[1] In the application, plaintiff claims disability began on October 18, 2010. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on October 27, 2015, before Administrative Law Judge (ALJ) Sara A. Gillis. In a November 19, 2015, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): thoracic and lumbar degenerative disc disease and mild scoliosis of the cervical spine;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work, except the claimant can only occasionally stoop and crouch;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 20-25.

After the Appeals Council declined review on January 13, 2017, this appeal followed.

///
///
///
///
///
///
///
///
///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on July 26, 2017 (Doc. 10).

## III. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ erred at Step 2 in finding his headaches and anxiety non-severe; (2) the ALJ's Step 4 residual functional capacity assessment is also flawed due to the Step 2 error; and (3) the ALJ failed to develop the record.

### A. **Severity Determination**

At Step 2 of the sequential evaluation process, the ALJ determined whether plaintiff's impairments were severe. See id. at 20-21. To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

In concluding plaintiff has the severe impairments of thoracic and lumbar degenerative disc disease and mild scoliosis of the cervical spine, the ALJ stated:

> The claimant alleges disability beginning October [] 2010; however, there are no significant treatment notes until April 2012, when claimant was involved in a motor vehicle accident. April 30, 2012, treatment notes document claimant with diagnoses of neck and back pain due to motor vehicle accident (Exhibit 1F, pg. 4). April 30, 2012, radiograph of the lumbar spine revealed mild dextroscoliosis and no acute fracture (Exhibit 1F, pg. 3).

/ / /

/ / /

> October 7, 2013, radiograph of the thoracic spine showed at T6-7, there was a prominent, 4-5 mm extradural defect which was paracentral and to the left of the midline and extended into the left neural foramina exit zone. There was subtle mass effect upon the left lateral aspect of the cord with moderate left neural foraminal compromise. At T7-8, disc space narrowing was present with a 4-5 mm extradural defect, resulting in a moderate amount of mass effect upon the cord. There was no abnormal signal identified within the cord. At T8-9, there was 3-4 mm disc protrusion that did not appear to extend into the foraminal exit zones but with some subtle mass effect upon the cord (Exhibit 2F, pg. 1, 2).
>
> October 7, 2013, radiograph of the lumbar spine documented a broad 5-6 mm disc protrusion with moderate spinal stenosis. At L5-S1, there was a 5-6 mm disc protrusion, which extended partially inferiorly along the posterior superior endplate of S1. High-grade left and moderate to high-grade right neural foraminal compromise was seen with moderate to high-grade spinal stenosis present (Exhibit 2F, pg. 4).
>
> November 13, 2013, treatment notes demonstrate claimant with diagnoses of thoracic and lumbar strain with herniated disc (Exhibit 3F, pg. 4).
>
> December 6, 2013 treatment notes reflect diagnoses of lumbago and pain in thoracic spine (Exhibit 3F, pg. 10).
>
> March 31, 2014, treatment notes reflect diagnoses of thoracic spinal stenosis, lumbar spinal stenosis, degenerative disc disease of the lumbar spine treated conservatively with pain medication, TENS unit, and home exercise recommended by physical therapist (Exhibit 4F, pg. 1, 2).
>
> June 2, 2014, treatment notes show claimant with diagnostic assessment of degenerative disc disease lumbar spine, and thoracic spine pain treated with prescription medication (Exhibit 7F, pg. 27).
>
> June 14, 2014, treatment notes reveal claimant with assessments of degenerative disc disease lumbar spine, lumbar spinal stenosis, thoracic spinal stenosis and headache (Exhibit 7F, pg. 7).

CAR 20-21.

Plaintiff contends the ALJ erred in concluding his headaches and anxiety are not severe impairments. Defendant first argues any error is harmless. According to defendant:

> Plaintiff objects that the ALJ did not specifically identify his headaches and anxiety conditions as severe impairments, but in so arguing, Plaintiff misses the point. Because he had at least one severe impairment, the ALJ had to consider the functional effect of all his impairments, severe and non-severe, and continued to steps three and four of the sequential evaluation (AR 21-24). Thus, even if the court finds that the ALJ erred by not finding these specific impairments as severe, any error was harmless given that the ALJ proceeded to the subsequent steps of the sequential evaluation process and considered these impairments' impact on Plaintiff's RFC (AR 24). *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("the court will not reverse an ALJ's decision

for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination") (citations and quotations omitted).

Defendant also argues the ALJ did not err.

### 1. Headaches

Plaintiff argues the ALJ erred in concluding his migraine headache impairment is not severe. Regarding plaintiff's complaints of headaches, the ALJ stated:

> . . .The claimant has migraine headaches. However, he testified that he has had them since age 13. The claimant has been able to work with them, thus they are not severe enough or frequent enough to affect work ability.

<u>Id.</u> at 21.

Plaintiff argues:

> The ALJ uses the wrong standard here. Whether or not Plaintiff's headaches are severe enough (alone or in combination with other impairments) to prevent all work is a Step 5 consideration, not a Step 2 consideration. 20 C.F.R. §§404.1520(c), 404.1521, 416.920(c), 416.921. As explained above, at Step 2 the ALJ is supposed to determine which impairments cause more than a minimal effect on a Plaintiff's ability to work. Just because Plaintiff has worked in the past while having headaches does not mean that they did not interfere with his work activity in large or small ways. . . .

In support of his argument, plaintiff references portions of the record showing headaches "create a significant problem for him." Specifically, citing CAR 60-63 and 81-83, plaintiff notes the consultative reviewing doctors found plaintiff's migraines to be severe.

According to defendant:

> . . . Regarding Plaintiff's headaches condition, substantial evidence supported the ALJ's finding that Plaintiff did not prove this was a severe impairment. While Plaintiff refers to the fact that various doctors had reported Plaintiff's complaint of headaches and prescribed him medication (*see* Plaintiff's Motion for Summary Judgment (Pl. Mot.) at 7:3-8:6), the mere fact that Plaintiff had headaches did not mean *per se* that Plaintiff's headaches were severe or disabling. *Cf. Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("existence of emotional disorder, however, is not per se disabling;" "there must be proof of the impairment's disabling severity"). Moreover, besides the State agency reviewing physician opinions, the reports that Plaintiff cites to do not refer to any specific limitation from the headaches or provide proof of the impairment's severity and merely establish that Plaintiff had headaches and took medication for them (*see* Pl. Mot. at 7:18-23 referring to AR 318-321, 328-329, 331, 359, 362, 398). Furthermore, the evidence that the State agency reviewing physician [sic] reviewed and relied on for their finding also only establish that Plaintiff claimed to be disabled by migraine

| | |
|---|---|
|1| headaches and other impairments and had diagnosed migraine headaches |
|2| (mostly based on his complaints) for which he saw doctors, but did not establish proof of the headaches' severity (AR 62, 82-83). |

Defendant also contends

> . . .[I]t was reasonable for the ALJ to find that the fact that Plaintiff had his headaches condition since he was 13 years old and worked for 16 years at his past job, while having headaches for which he took Extra Strength Excedrin, established that Plaintiff's headaches were not severe, or did not have a significant impact on his ability to work (AR 21, 44-45). 20 C.F.R. § 404.1520(c) (a "severe" impairment is a medically determinable impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities"); SSR 96-3p, 1996 WL 374181, at *1 (an impairment is "not severe" if it is only a slight abnormality or combination of slight abnormalities that has no more than a minimal effect on the individual's ability to perform basic work activities). Thus, even where Plaintiff may have a different interpretation of the evidence, the ALJ's interpretation was rational and should be upheld. *Magallanes*, 881 F.2d at 750 (ALJ's role to interpret the evidence; where there may be more than one rational interpretation, the ALJ's conclusion must be upheld); *see also Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record"); *accord Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld).

The court agrees with plaintiff and finds the ALJ applied the incorrect legal standard for determining the severity of plaintiff's headache impairment. An impairment is considered non-severe only when the evidence establishes a slight abnormality that has no more than a minimal effect on the individual's ability to work. See SSR 85-28; see also Yuckert, 841 F.2d at 306 (adopting SSR 85-28). As the Supreme Court has held, the standard at Step 2 is de minimus. See Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987).

The court finds the consultative reviewing doctors' opinion that plaintiff's headaches are severe satisfies plaintiff's de minimus burden.[2] The ALJ's reference to plaintiff's ability to work since he was 13 despite headaches does not undermine this evidence because, as plaintiff observes, the question is whether an impairment has more than a minimal effect on

---

[2] Defendant collaterally attacks the consultative reviewing doctors' opinion that plaintiff's headache impairment is severe, arguing that the opinion is based exclusively on plaintiff's subjective complaints. This argument is unpersuasive because, rather than rejecting this opinion as unsupported by clinical findings, the ALJ "gave significant weight to the State agency consultants. . . ." CAR 23.

plaintiff's ability to work, not whether plaintiff was able to work in the past despite headaches. The latter inquiry is more appropriate at Steps 4 and 5.

Defendant argues any error is harmless. The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts. For example, in <u>Stout v. Commissioner of Social Security</u>, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Id.</u> at 1056; <u>see also</u> <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 885 (9th Cir. 2006) (citing <u>Stout</u>, 454 F.3d at 1056). Similarly, in <u>Batson v. Commissioner of Social Security</u>, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony. Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

<u>Id.</u> at 1197 (citing <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In <u>Curry</u>, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education. The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion. <u>See</u> <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in <u>Carmickle v. Commissioner</u>, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility. Citing <u>Batson</u>, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error." <u>See id.</u> at 1162. The court articulated the difference between harmless error standards set

9

forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error. In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record. We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision. Likewise, in Stout, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."
>
> Our specific holding in Stout does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue. There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.

Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

Thus, where the ALJ's errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the Batson standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid.

Here, Batson controls because the ALJ applied the incorrect legal standard in determining the severity of plaintiff's headaches. The error, therefore, is only harmless if the ultimate disability determination remains valid despite the error. Defendant contends the error is harmless because the ALJ nonetheless reached the Step 4 determination considering plaintiff's headache impairment as part of a multiple-impairments analysis and concluded that plaintiff was not disabled. This is not to say, however, that the ALJ would have necessarily reached the same

conclusion had she applied the correct legal standard to determine whether plaintiff's headache impairment is severe. For example, the ALJ did not consider the extent to which plaintiff's headache impairment erodes the occupational base for light work because she did not consider the impairment to be severe. Had the ALJ considered plaintiff's headache impairment severe, the ALJ's vocational analysis could have resulted in a different disability determination. The error, therefore, was not inconsequential.

2. Anxiety

Plaintiff also contends the ALJ erred in finding his anxiety impairment non-severe. Regarding anxiety, the ALJ stated:

> The claimant as well has diagnosis of anxiety (Exhibit 4F, pg. 3), but there has been no treatment and there is no indication that the claimant met the 12-month duration requirement per 20 C.F.R. 404.509 and 416.909, for a medically determinable impairment.

CAR 21.

According to plaintiff:

> . . .[T]he ALJ ignored the evidence of Plaintiff's anxiety and other mental health issues in the record and erroneously failed to complete the Psychiatric Review Technique (PRT) to determine the extent of Plaintiff's mental health issues on a function by function basis. Regulations *require* an ALJ to complete a PRT analysis whenever there is a colorable claim of mental impairment. 20 C.F.R. §§ 404.1520(a), 416.920(a); *See*, *e.g.*, *Keyser v. Commissioner of Social Security*, 648 F. 3d 721, 724 (9th Cir. 2011). Failure to complete the PRT when warranted requires remand. *Id.*

In particular, citing CAR 367, 371, and 377, plaintiff notes he was prescribed Neurontin and Buspar for anxiety.

Defendant argues:

> . . .[S]ubstantial evidence supported the ALJ's finding that Plaintiff did not have a severe anxiety impairment. It is notable that Plaintiff did not list anxiety as one of the issues limiting his ability to work in his disability report that he submitted when applying for Social Security disability benefits (AR 204). Also notable is that Plaintiff did not testify about or give statements about having any mental functional limitations from any condition, including from anxiety (*see generally* AR 33-53). Otherwise, Plaintiff presents only at this stage in his argument, passing references to anxiety and taking medication for it, but does not prove the severity of the impairment (*see* Pl. Mot. at 8:16-22 referring to AR 316, 320, 367, 371, 377, 379, 380, 382). *See* 42 U.S.C. § 423(d)(5); *Bayliss*,

11

427 F.3d at 1217 (claimant's burden to prove he is disabled); *cf. Sample*, 694 F.2d at 642 ("existence of emotional disorder, however, is not per se disabling;" "there must be proof of the impairment's disabling severity"). This hardly establishes the existence of severe impairment that significantly limited Plaintiff's ability to work, where Plaintiff himself did not allege that he was limited by anxiety.

The court agrees with defendant and finds plaintiff has failed to meet his burden of establishing that anxiety results in more than a minimal effect on his ability to work. Plaintiff's citations to evidence showing he was prescribed medication for anxiety does not necessarily indicate plaintiff's anxiety is more than a slight abnormality, let alone an abnormality causing more than minimal effects on his ability to work. See SSR 85-28; see also Yuckert, 841 F.2d at 306.

**B.  Residual Functional Capacity Assessment**

At Step 4, the ALJ determined plaintiff has the residual functional capacity for light work. See CAR 22-24. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[3]

Because the court finds the ALJ erred with respect to the severity of plaintiff's headache impairment, the court also agrees with plaintiff that the ALJ's Step 4 determination fails to account for limitations potentially resulting from headaches.

/ / /

---

[3]  Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

### C. **Duty to Develop the Record**

The ALJ has an independent duty to fully and fairly develop the record and assure the claimant's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. See id. This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty. See Tonapetyan, 242 F.3d at 1150. The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

Plaintiff argues:

> Here, the ALJ failed to order a consultative examination to fully assess the extent of Plaintiff's physical and mental limitations.
> As discussed *supra*, the *only* opinions in the record are by non-examining State Agency medical consultants, and they only consider Plaintiff's physical impairments and not his mental ones. T 56-95. The ALJ should have ordered both mental and physical consultative examinations in order to have an opinion by someone that [sic] has actually examined the Plaintiff in the record. The duty to develop the record is triggered when there is ambiguous evidence. *Tonapetyan,* 242 F.3d at 1150. Here, the evidence as to how Plaintiff's impairments affect his ability to work is ambiguous since it is just raw medical data and the ALJ rejected Plaintiff's testimony about the effects of his impairments. Further, the [sic]
> For the reasons argued above, the RFC determination is not supported by substantial evidence. Accordingly, this matter should be remanded for calculation of benefits, or, in the alternative, for further administrative proceedings.

Plaintiff's argument is unpersuasive because there is no indication the evidence was ambiguous or the ALJ found the record inadequate. See Tonapetyan, 242 F.3d at 1150. While plaintiff contends the ALJ should have ordered physical and mental consultative examinations, it is plaintiff – not the Commissioner – who bears the initial burden of presenting evidence demonstrating disability. See Quang Van Han, 882 F.2d at 1456; Terry, 903 F.2d at 1275; Gallant, 753 F.2d at 1452; see also 20 C.F.R. §§ 404.1520(f) and 416.920(f). To the extent

13

plaintiff assigns error because "the ALJ rejected Plaintiff's testimony about the effects of his impairments," this argument is also unpersuasive because plaintiff has not explained how the ALJ's adverse credibility finding is flawed.

### IV. CONCLUSION

The court finds the ALJ's determination regarding the severity of plaintiff's headache impairment is not based on proper legal analysis. This matter will, therefore, be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 12) is granted;
2. Defendant's motion for summary judgment (Doc. 15) is denied;
3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: September 20, 2018

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE